

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-8-2007

# Ibrahim v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2622

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Ibrahim v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1804.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1804

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-2622

———

EKHLAS KAMAL ABDOU IBRAHIM;
SAFWAT SAMI HANNA TAWDROS,

Petitioners,

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

———

On Petition for Review of an Order
of the Board of Immigration Appeals
(BIA No. A95-479-006)
Immigration Judge: Alberto J. Riefkohl

———

Submitted pursuant to Third Circuit LAR 34.1(a)
December 13, 2006

Before: FUENTES and VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>, and PADOVA,[*] <u>District</u>
<u>Judge</u>.

(Filed:  January 8, 2007)

_____

[*]The Honorable John R. Padova, District Judge for the United States District Court
for the Eastern District of Pennsylvania, sitting by designation.

OPINION OF THE COURT

FUENTES, Circuit Judge.

Ekhlas Ibrahim and Safwat Tawdros petition for review of a decision of the Board of Immigration Appeals ("BIA") summarily affirming an immigration judge's order denying their requested relief. We will deny the petition.

**I.**

A. Petitioners' Account

Ibrahim is a Coptic Christian and native of Egypt. Residing in Alexandria, Ibrahim performed social work in a school for the handicapped and provided charity services to poor Christian villagers through her church. Ibrahim claims that on May 15, 2001, she was abducted by four men with knives and sticks. The men placed her in a car blindfolded and drove her to a cave where she was confronted by the group's ringleader. The ringleader threatened to kill her if she would not quit her work on behalf of her church and convert to Islam. He said he would let her go and give her one chance to comply. After this encounter, the men drove Ibrahim back to Alexandria and let her out of the car. Ibrahim then went to file a police report, but the police refused to fill out the report.

About two weeks later, on June 2, 2001, Ibrahim married petitioner Tawdros, who had recently returned from a business trip. The couple had a honeymoon, and, within a

few weeks, Ibrahim discovered she was pregnant. On June 30, 2001, Ibrahim was on her way to church with her father. Six men stopped them and demanded they get into a van—Ibrahim and her father refused. The men assaulted them, striking Ibrahim in the stomach and back, causing her to fall unconscious. Ibrahim was taken to the hospital, where, when she awoke, her husband told her she needed to have an abortion. After having this surgery, Ibrahim went away with her husband to a monastery for a three-and-a-half month recovery. Upon returning to Alexandria, petitioners fled to America.

B.      The Record on Review

Petitioners arrived in the United States on October 18, 2001 as visitors for pleasure. In April 2002, Ibrahim submitted an application for asylum, naming her husband as a dependent petitioner. On June 25, 2002, Ibrahim was interviewed by an asylum officer who referred the petition to an immigration judge ("IJ"). In the meantime, on July 2, 2002, the Bureau of Immigration and Customs Enforcement issued a Notice to Appear, charging petitioners as removable for overstaying their visas. Petitioners conceded removability but sought asylum, withholding of removal, and relief under the Convention Against Torture. In pursuit of their application, petitioners submitted a variety of supplemental documentation. They appeared before an IJ for a hearing on February 24, 2003—that hearing was cut short because of problems with the translator, but a new hearing was scheduled. On May 20, 2003, petitioners appeared before the IJ who began proceedings anew. Both petitioners testified before the IJ.

On July 18, 2003, the IJ issued a decision denying petitioners' application for

relief because of an adverse credibility determination. The IJ determined that various inconsistencies in petitioners' respective accounts undermined their credibility, and therefore discounted all of their testimony. For example, Ibrahim testified that she was too ashamed to tell anyone in her family about the first attack until after the second attack; yet, when Tawdros testified, he explained that Ibrahim's father knew about the first attack before the second attack. Moreover, Ibrahim testified that, in the period between the two attacks, the couple traveled together on a honeymoon to Northern Egypt. Yet, Tawdros seems to have denied taking any honeymoon at all; instead, Tawdros testified that, in accordance with Egyptian custom, the couple stayed at home visiting with friends and relatives, taking day trips here or there.

Further, Tawdros testified that, when he took Ibrahim to the hospital after the attack, he explained to the physician that his wife had been attacked by masked men. Yet, the physician's report describing Ibrahim's medical diagnosis and treatment does not mention the attack. Moreover, Ibrahim never mentioned the miscarriage to her doctor in the United States who was responsible for delivering a child born after her arrival. Based on these inconsistencies, the IJ denied relief.

On March 31, 2005, the BIA adopted and affirmed the decision of the IJ. This appeal followed.

## II.

We have jurisdiction to review the BIA's order under 8 U.S.C. § 1252. When the BIA summarily affirms an IJ's decision, we review the IJ's decision. Partyka v. Attorney

General, 417 F.3d 408, 411 (3d Cir. 2005). An IJ's adverse credibility determination is reviewed for substantial evidence. See Berishaj v. Ashcroft, 378 F.3d 314, 323 (3d Cir. 2004). Under this standard, we uphold the IJ's adverse credibility determination if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Chen v. Gonzales, 434 F.3d 212, 216 (3d Cir. 2005). We will sustain a challenge to an adverse credibility determination only when "any reasonable adjudicator would be compelled to conclude to the contrary" of the IJ. 8 U.S.C. § 1252(b)(4)(B); Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004).

After reviewing the record as a whole, we conclude that the IJ's concerns about credibility are supported by substantial evidence. Although there is a reasonable explanation for some of the testimonial discrepancies—and others are merely incidental—the inconsistencies relied on by the IJ cast doubt on the overall credibility of petitioners. All of them surround the few weeks between mid-May and late June of 2001 during which all of the relevant events occurred. It is understandable that petitioners might have forgotten some of the minor details of that period; still, they should have been able to present basically consistent testimony about the timing of events, their whereabouts, and their communications about the attacks.

More significantly, the only documentary evidence produced—the medical report—fails to mention the attack on Ibrahim. Tawdros testified that he told the doctor that his wife had been the victim of an attack by four assailants. It was reasonable, therefore, for the IJ to expect the medical report to include some suggestion of an attack.

It did not, and petitioners did not provide justification for its absence. It was not arbitrary or irrational, therefore, to conclude that this document contradicted petitioners' testimonial accounts of persecution.

In sum, consideration of petitioners' testimonial inconsistencies, coupled with the documentary evidence presented, reveals substantial evidence to support the IJ's adverse credibility determination. Reviewing the record as a whole, we cannot conclude that any reasonable adjudicator would be compelled to find to the contrary of the IJ. Accordingly, we will deny the petition.